## LUCEY v. MATTESON.

(District Court, N. D. New York. July 24, 1914.)

BANKRUPTCY (§ 290*)—PREFERENCES—ACTION BY TRUSTEE—DEFENSES.

In a suit by a trustee in bankruptcy to recover a preference to the bankrupt's mother, a defense to the effect that after transfer the mother without consideration retransferred the property to the bankrupt on his representation that thereby he would be enabled to pay his creditors was not subject to a motion to strike.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 418–429, 451–455; Dec. Dig. § 290.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Bankruptcy. . Action by Dennis B. Lucey, as trustee in bankruptcy of Roswell P. Matteson, against Mary E. Matteson. Motion to strike a defense denied.

Harry M. Ingram and Frank L. Cubley, both of Potsdam, N. Y., for plaintiff.

C. A. Murphy, of Potsdam, N. Y., for defendant.

RAY, District Judge. Roswell P. Matteson, the bankrupt, is the son of the defendant, Mary E. Matteson. On the 11th day of May, 1912, a petition in involuntary bankruptcy was filed against said Roswell P. Matteson. His mother, this defendant, claims he is largely indebted to her. Matteson opposed the petition, but on a reference his insolvency was established and also the alleged acts of bankruptcy.

March 12, 1912, to secure an alleged antecedent debt of $6,000, Matteson executed and delivered to said Mary E. Matteson, his mother, a chattel mortgage on all his property, and April 22, 1912, in consideration of $4,600 (recited and being the same debt), he gave to her a bill of sale of this property and possession thereof, all while insolvent.

The trustee in bankruptcy brings suit to recover the goods and property transferred, or their value, as constituting a preference.

The answer as a first defense contains a general denial of the most of the material allegations of the complaint and as a second defense alleges as follows:

"For a second and further defense: Alleges that shortly after the giving of the bill of sale, mentioned in the complaint as 'Schedule C,' that said Roswell P. Matteson requested this defendant to retransfer to him said stock as he had an opportunity to sell the same, and would be enabled to pay all his creditors from the proceeds of said sale, and that thereupon, relying on said representation, and for the purpose of protecting the other creditors of said Roswell P. Matteson, and enabling them to receive their pay, this defendant did transfer to said Roswell P. Matteson said stock and property mentioned and described in the said 'Schedule C,' and reinvested him with the title to the same as fully as he had held the same prior to the execution of said chattel mortgage and bill of sale, and by executing said transfer placed said Roswell P. Matteson and his creditors in the same position that they occupied before the giving of said chattel mortgage and bill of sale, and to enable said Roswell P. Matteson to sell said property, and his debts pay, this defendant executed said transfer without any consideration to her passing, and this defendant did not receive any money, property, or thing of value whatever as the result of the several transfers set forth in the complaint. Alleges that, after the said retransfer to said Roswell P. Matteson of the property aforesaid, he did sell the same, which was worth about $3,000, and received the money therefor, and that no part of the proceeds of such sale were ever received by this defendant. And this defendant alleges that, instead of having secured the payment of her just claims against said Roswell P. Matteson, she has received nothing whatever thereon, and has in no way profited by the giving of said chattel mortgage or bill of sale."

The plaintiff moves to strike out this second alleged defense on the ground that if true it constitutes no defense, legal or equitable.

· The title to the property by virtue of the bill of sale passed to Mary E. Matteson, and under the allegations of the complaint such transfer constituted a preference. Having received a preference by the transfer to her of these goods, delivery having been made, could Mary E.

Matteson and Roswell P. Matteson avoid the consequences to her—liability for the property or its proceeds—by her executing and delivering to him a bill of sale of such property and allowing him to take and sell the property and receive the proceeds (no consideration passing), he merely stating that he desired such property to sell and would be enabled to pay all his creditors?

When the property was turned over to Mary E. Matteson by Roswell P. Matteson, his debt to her was to that extent paid and she had received a preference. It was a completed transaction and her liability was fixed. Mary E. Matteson could have sold the property or given it away. In either event her liability to the trustee when appointed would remain. If, however, she should return the property or its value to the trustee when appointed, her liability would terminate. So if she had placed the property or its value in the hands of Roswell P. Matteson, his estate not being depleted by a purchase of such property from her, and he had turned same or its proceeds over to the trustee or had sold same and turned the proceeds over to his creditors pro rata, these facts undoubtedly would present an equitable defense. The trustee would not be permitted to recover from Mrs. Matteson that which he had received from Matteson, that or its value, he having received all he was entitled to, the creditors having received all they were entitled to as the case might be. But here we have no such facts. There is no allegation or pretense that any of the property or any of its proceeds has been received by the trustee or any of the creditors, or that it went to swell the estate of Matteson as turned over to the trustee. It has not reached the trustee or the creditors directly or indirectly. For the purpose of testing this defense we must assume that Mary E. Matteson received the property having reasonable cause to believe that a preference was intended. Having so received it, she knew her liability as she is presumed to have known the law. The defense is that she gave it back to Roswell P. to sell and dispose of on his statement that he could sell it or had an opportunity to sell and that he could pay all his creditors. It is claimed by the trustee that this is all a sham and part of a scheme to deprive the creditors of this property and its proceeds.

The defense set up and in question here does not state when the retransfer was made and the sale made by Matteson, whether before or after the bankruptcy proceedings were commenced. If prior thereto, then the property became the property of Matteson, the bankrupt, prior to the adjudication. If the retransfer was made subsequently to the filing of the petition, then it became a part of the estate of the bankrupt, and title must have vested in the trustee as of the date of the adjudication. If prior to bankruptcy proceedings an insolvent person transfers his property to a creditor in payment of a pre-existing indebtedness under such circumstances and with such knowledge that the transfer amounts to the giving and receipt of a preference, and prior to the institution of bankruptcy proceedings the creditor returns the property, no consideration being paid therefor, so that the estate is not depleted, even if the insolvent person proceeds to waste the property, and the return is made in good faith, is the one who received

the preference, but who so returned it, liable to the trustee when appointed? Does any cause of action remain? If the wrong is undone, corrected in good faith prior to bankruptcy proceedings, can the trustee complain? It seems to me not. If this property was actually returned prior to bankruptcy proceedings in good faith, and nothing was paid therefor by the bankrupt, and his estate was not depleted by the conveyance to Mrs. Matteson, the mother, it seems to me that such return ended the liability of the mother, Mary E. Matteson. Certain papers were exhibited on the trial and certain evidence presented which indicate a fraudulent transaction in which both the mother and son participated, but this court cannot try the case on the merits. On the whole, I am of the opinion that the alleged defense (2) should not be stricken out and that all the facts should be inquired into and disclosed on the trial. Substantial equity may then be done.

Motion to strike out denied.